2004-NMCA-107

96 P.3d 1192

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**David GRIEGO, Defendant–Appellee.**

**State of New Mexico, Plaintiff–Appellant,**

v.

**Adam Lee Coffey, Defendant–Appellee.**

**No. 23,701, 23,706, 23,612.**

Court of Appeals of New Mexico.

June 30, 2004.

Patricia A. Madrid, Attorney General, Steve Suttle, Assistant Attorney General, Albuquerque, for Appellant in Nos. 23,701 and 23,706.

John Bigelow, Chief Public Defender, Jennifer Byrns, Assistant Appellate Defender, Santa Fe, for Appellee in Nos. 23,701 and 23,706.

Patricia A. Madrid, Attorney General, Santa Fe, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellant in No. 23,612.

Jack Bennett Jacks, Law Office of J.B. Jacks, Albuquerque, for Appellee in No. 23,-612.

## OPINION

KENNEDY, J.

{1} These cases concern whether the State may appeal non-final orders from the district court. In Defendant Griego's case, the State asks this Court to accept its appeal of the district court's order denying its motion in limine seeking to restrict impeachment of the victim based on (among other things) his admissions that as a paid police informant, he had falsely stated and exaggerated facts in cases which he worked. In Defendant Coffey's case, the State asks us to review an order allowing Defendant to withdraw his plea. We hold that neither order constitutes a final order from which the State may appeal, and therefore dismiss these appeals owing to our lack of jurisdiction to consider them. These two cases are consolidated for purposes of this opinion only.

## DISCUSSION

### State v. Griego

{2} In Defendant Griego's case, the State missed the deadline for an interlocutory appeal, conceding in its brief that an interlocutory appeal does not lie in this case. The State now asks us to accept this appeal as a direct appeal from a dismissal of a criminal complaint pursuant to NMSA 1978, § 39–3–3(B)(1) (1972). There was no dismissal or disposition by the district court.

{3} The order from which the State appeals denied the State's motion in limine to prevent Defendant Griego from impeaching the State's witness with the use of "extrinsic evidence" of conduct. Rule 11–608(B) NMRA 2004. The order was filed on November 20, 2002; the notice of appeal was filed on December 3, 2002. The district court stated at the time of its order that the prosecutor "can take his interlocutory appeal." The district court's granting permission for the State to act, however, does not give us jurisdiction to hear this appeal. *Sanchez v. Bradbury & Stamm Constr.*, 109 N.M. 47, 48, 781 P.2d 319, 320 (Ct.App.1989) (holding that the "court of appeals only has jurisdiction to review matters as provided by law"); *see* N.M. Const. art. VI, § 29. Twelve days after the order was filed the State appealed it as an appeal from a final order. *See* § 39–3–3(B)(1). The State thus did not file an interlocutory appeal from the order pursuant to Section 39–3–3(B)(2), which states that an appeal may be taken within ten days, and only from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property.

{4} The State appealed the court's order without the case being tried or dismissed. Immediately prior to trial, the State's victim informed the State that Griego's codefendant had actually not been involved in the incident, contrary to his prior identification of him as a perpetrator of the alleged armed robbery against him. The State dismissed the case against the codefendant. With the jury in the courthouse, just prior to trial, the defense informed the district court that it intended to impeach the victim's testimony, using his recent problems with identification of the codefendant. Also, the victim's prior statement that he had been a paid police informant who had made false reports to the police and exaggerated the severity of crimes in which he was informing would be used to impeach his testimony. These statements were made when defense counsel interviewed victim in jail, where victim was incarcerated for other matters. Additionally, the defense intended to impeach the victim with evidence that he had committed other crimes; all of which the defense considered to be legitimate fodder for impeachment under Rule 11–608. The State represented to the district court that if questioned about his activities as an informant, the victim would refuse to testify or commit perjury. It moved for the district court to prohibit the defense from using the victim's status as a paid informant and his conduct while he was an informant to impeach his testimony. The district court denied the motion, and continued the trial for the State to take an interlocutory appeal, which it did not take.

### Interlocutory Appeal in Defendant Griego's Case

{5} We are allowed by statute to hear interlocutory appeals from non-final or-

ders. *See State v. Ahasteen,* 1998–NMCA–158, ¶ 10, 126 N.M. 238, 968 P.2d 328. However, in order for this Court to hear the State's interlocutory appeal, the requirements of Section 39–3–3(B)(2) must be met. The State concedes that they were not.

{6} First, the State did not appeal within the ten day period allowed by Section 39–3–3(B)(2). Second, the subject matter allowed under Section 39–3–3(B)(2) for such an appeal does not include a denial of a motion that had nothing to do with exclusion or suppression of evidence. Therefore, the type of order on the evidentiary matter at issue in this case is not considered a final order from which the State may take a direct appeal. *See Sims v. Sims,* 1996–NMSC–078, ¶ 59, 122 N.M. 618, 930 P.2d 153 (stating that "[a]n interlocutory decision is any decision made by the court prior to the final judgment"). The State concedes in its brief that these defects are "fatal to any theory of interlocutory appeal." Because the State failed to comply with the requirements of Section 39–3–3(B)(2), we lack subject matter jurisdiction and therefore do not accept this as an interlocutory appeal.

### The District Court's Order in Griego's Case is not a Final Order

{7} Without specific authorization for an interlocutory appeal, the right to appeal is generally limited to final judgments and orders. *See High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 33, 888 P.2d 475, 479 (Ct.App.1994).

{8} Conceding its failure to establish entitlement to an interlocutory appeal under Section 39–3–3(B)(2), the State urges this Court to hear this appeal under Section 39–3–3(B)(1), which allows the State to appeal "within thirty days from a decision, judgment or order dismissing a complaint, indictment or information as to any one or more counts[.]" However, there must be a final order to appeal under Section 39–3–3(B)(1). "A final order is commonly defined as an order that decides all issues of fact and law necessary to be determined or which completely disposes of the case to the extent the court had the power to dispose of it." *Ahasteen,* 1998–NMCA–158, ¶ 10, 126 N.M.

238, 968 P.2d 328. Section 39–3–3(B)(1) requires that the order dismiss the indictment or information. However, our Supreme Court has noted that there are exceptions to this general rule. *Ahasteen,* 1998–NMCA–158, ¶ 10, 126 N.M. 238, 968 P.2d 328 (noting that "the term finality is to be given a practical, rather than a technical construction") (internal quotation marks and citation omitted). In this case, the order was not a final order dismissing the case. In fact, the only mention of dismissal in this case came in the prosecutor's comment to the court of how the State intended to handle the victim's impending perjury: "The State would have no other option at that point, but in all likelihood to dismiss since I can't support perjury." This "likelihood" did not come to pass.

{9} Under limited circumstances, this Court will review an otherwise non-final order pursuant to the doctrine of practical finality. *Id.,* ¶ 12. The State urges this Court to apply the analysis and reasoning in *Ahasteen,* which reviewed the State's appeal under the doctrine of practical finality. *See id.,* ¶ 13. To support its request for us to take this appeal, the State contends that while the order was technically not a dismissal, it was a "practical" dismissal of the case because "the order did effectively dispose of the case because the prosecution no longer had a complaining witness" and it "effectively left the prosecution with no evidence to present."

{10} We reject the State's argument. First, the consequences the State asserts did not occur. There has been no dismissal or disposition of the charges, and no dismissal results from the order. The State's decision to dismiss resulted from its choice not to proceed because of its recognition of its ethical duty not to put perjuring witnesses on the stand to testify.

{11} Second, the reasoning used in *Ahasteen* in applying the doctrine of practical finality does not apply in this case. We agree with the State that "[i]n determining whether a judgment is final, our courts are instructed to look to the substance and effect of an order and not to its form." *Id.,* ¶ 10. The doctrine of practical finality is not appli-

cable to review "one of many routine decisions made during the course of proceedings in one tribunal, such as a ruling on an evidentiary issue." *See In re Larry K.,* 1999–NMCA–078, ¶ 11, 127 N.M. 461, 982 P.2d 1060. As discussed in *Larry K.,* the decision in *Ahasteen* was a "concluding decision[ ]" of a particular tribunal concerning a decision to end the case's life before that court, and that the reasoning used in that case was inapplicable in other contexts. *Id.,* ¶¶ 11–12.

{12} The order allowing impeachment by the defense demonstrates its lack of practical finality in another manner: The very *impeachment* the State sought to prohibit never took place. The district court's ruling merely opened the gate for the defense to properly impeach the State's witness with instances of specific conduct. The order appealed from is an evidentiary ruling. It simply allows the defense to impeach a witness with questions about various acts which he has committed. The State's argument as to the effect of such impeachment is no more than speculation. *See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (holding that an appellate court cannot review the propriety of allowing impeachment that does not occur).

{13} Rule 11–608 allows for impeachment by questioning the witness concerning evidence of instances of specific conduct. Whether the State's witness had previously lied to police in connection with being a paid informant or committed crimes is certainly within the ambit of the rule, and the record supports the district court's recognition of the defense's right to impeach the witness. Without the State calling the witness and without any action by the defense to cross examine and impeach the victim under the district court's order, we are in no position to say whether the impeachment would have been proper, or properly conducted. The State's concern that the witness would decline to answer or commit perjury to avoid answering in the event the defense explored certain areas is nothing over which the district court had any control.

{14} In *State v. Augustin M.,* 2003–NMCA–065, ¶¶ 64–65, 67, 133 N.M. 636, 68 P.3d 182, we held that the State did not have the right to appeal the district court's ruling that a criminal defendant had the right to present a religious-use defense to a drug charge, although it had the right to appeal a dismissal of the charge on the ground that such a defense was not presented to the grand jury. The inability of the State to immediately appeal the ruling permitting the defendant to assert his religious defense at trial in *Augustin M.* is directly analogous to the present situation where the defense was allowed to impeach the State's witness, if the State had called him. On the other hand, the State's ability to appeal a dismissal in *Augustin M.* is distinguishable because here the case has not been dismissed at all, let alone by the district court.

{15} In sum, the district court's order did not dispose of the case in any fashion. Hence, the doctrine of practical finality is inapplicable. That the State had no witness without the victim is not the result of any judicial determination. The State claims it was left without a case due to the district court's ruling denying its motion in limine. To the contrary, the State was left without a case because its sole witness was unwilling to be exposed as a liar, criminal, and paid police informant, and the State declined to allow him to commit perjury to avoid such exposure.

### State v. Coffey

■ {16} In Defendant Coffey's case, the State argues that it has a right to appeal the district court's order allowing Defendant Coffey to withdraw his guilty plea. Defendant Coffey was charged with a total of seven crimes in three separate cases by grand jury indictments. These cases arose from three separate and unrelated violent incidents. Including habitual offender and firearm enhancements, Defendant Coffey faced a possibility of being sentenced to approximately sixty-three years of incarceration if he was convicted of all charges. The cases were consolidated for purposes of a plea agreement. The range of incarceration allowed under the agreement was a minimum of sixteen to a maximum of eighteen years. Approximately five months later Defendant Coffey moved to withdraw his plea, arguing that

the plea was not knowingly and voluntarily made. After an evidentiary hearing, the district court granted Defendant Coffey's motion, finding that Defendant Coffey raised "substantial doubt on whether he sufficiently understood the plea and disposition agreement to knowingly enter it." The district court then ordered the cases against Defendant Coffey to be set for trial.

{17} In this case, the State acknowledges that generally appeals may only be taken from final judgments and orders or interlocutory orders which practically dispose of an action. The order allowing withdrawal of the plea agreement does not fall within the ambit of Section 39-3-3(B). However, the State argues that the district court's order allowing Defendant Coffey to withdraw his plea had the effect of being final under the doctrine of practical finality and that this doctrine should be applied to this case as an exception to the final order rule. The doctrine is inapplicable in this case because there is no support for expanding the rule of finality to an order allowing Defendant Coffey to withdraw his plea under the circumstances of this case. *See Larry K.*, 1999–NMCA–078, ¶ 11, 127 N.M. 461, 982 P.2d 1060. The result of withdrawing the plea creates no finality in that the charges against Defendant Coffey have not been dismissed. If anything, all cases are now reinstated and set for trial on the merits. "Not to limit the doctrine of practical finality would allow the exception to fast swallow the rule." *Id.*, ¶ 12.

### State Constitutional Right to Appeal

{18} In addition to the doctrine of practical finality, this Court has permitted a state constitutional exception to the rule that an appeal may only be taken from a final judgment. *Id.*, ¶ 13; *see* N.M. Const. art. VI, § 2. We have determined that "the State does not always have a right to appeal when it is aggrieved by the trial court's ruling but rather the right to appeal is only applicable where the interest is especially strong." *Larry K.*, 1999–NMCA–078, ¶ 14, 127 N.M. 461, 982 P.2d 1060. "[T]he implicated interest must be of the greatest importance to justify the constitutional right to appeal exception to the final judgment rule." *Id.* (in-

ternal quotation marks and citation omitted). In neither of these two cases does the State present us with a case compelling enough to justify making an exception to the final judgment rule. *See id.*, ¶¶ 14–15; *see also State v. Alvarez*, 113 N.M. 82, 84–85, 823 P.2d 324, 326–27 (Ct.App.1991) (holding that the State has no constitutional right to appeal from suppression orders).

{19} In Defendant Griego's case the State provides us with no support for its contention that its interest in preventing impeachment of a certain witness by particular methods is "of the greatest importance" to justify a constitutional right to appeal a non-final order. *See Larry K.*, 1999–NMCA–078, ¶ 14, 127 N.M. 461, 982 P.2d 1060. While the State has an interest in having its witnesses testify and in having the district court make correct rulings on evidentiary matters, district courts have broad discretion in admitting evidence and the State's interest in preventing impeachment of one of its witnesses "is nonetheless subject to the constraints of proper procedure." *Larry K.*, 1999–NMCA–078, ¶ 15, 127 N.M. 461, 982 P.2d 1060; *see also State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984) (stating that a district court's ruling on the admission of evidence will not be disturbed absent an abuse of discretion). Therefore, under these circumstances, the State has no constitutional right to appeal the denial of its motion in limine.

{20} In Defendant Coffey's case, the State argues that it has a "strong interest in enforcing the plea agreement." It further argues that allowing Defendant Coffey to withdraw his plea would cause "serious prejudice to the State" to proceed with a trial in three felony cases after witnesses had been excused and possibly had faded memories. In addition, the State argues that the district court's order allowing Defendant Coffey to withdraw his plea was contrary to law.

{21} We recognize that our constitution guarantees the State's right to appeal a disposition that is contrary to law if the State is aggrieved by that disposition. *See* N.M. Const. art. 6, § 2; *State v. Griffin*, 117 N.M. 745, 747, 877 P.2d 551, 553 (1994).

However, here the State's interest in enforcing plea agreements and the State's ability to proceed to trial after a significant lapse of time are not compelling enough to justify an exception to the final judgment rule. *Compare id.; State v. Armijo,* 118 N.M. 802, 804, 887 P.2d 1269, 1271 (Ct.App.1994) *with Larry K.,* 1999–NMCA–078, ¶¶ 14–15, 127 N.M. 461, 982 P.2d 1060. The State's assertion has no factual basis in the record. The district court specifically found that the State presented no witnesses or evidence to substantiate its claim that its case would be prejudiced by a loss of witnesses or evidence if the plea was withdrawn. Without a factual basis in the record, the State's bare assertions of prejudice give us no reason to find such a substantial interest so as to create an exception to our rule requiring appeals be taken only from final orders. *State v. Wacey C.,* 2004–NMCA–029, ¶ 13, 135 N.M. 186, 86 P.3d 611 ("Arguments of counsel are not evidence and cannot be used to prove a fact.").

**CONCLUSION**

{22}   There was not a final judgment in these cases, and we therefore dismiss these appeals for lack of jurisdiction. Because this Court lacks jurisdiction over these appeals, we decline to reach the other issues raised in the briefs.

{23}   **IT IS SO ORDERED.**

WECHSLER, C.J., and ROBINSON, J., concur.